Chancellor Descmssure.
This is an appeal by the defendant from the decree of the circuit court, in favor of complainant.
The following is the substance of the case as made by the pleadings, on which this appeal is founded’: — -Mary Maples made and executed her last will and testamentan the presence of two witnesses, on the 24th October, 1793, wherein and whereby she bequeathed, among other things, as follows: “I give and bequeath to my beloved grand-daugliter, Susannah Stone, and her heirs forever, a negro girl named Hetty, with all her future issue and increase, and in no wise subject to, or liable for, any debt or debts, contract or agreement of her father-in-law, or any future husband, in any shape, manner or form; and in case of her death before she shall attain the age of twenty, or without issue, then '.hat part I give and bequeath unto my beloved grand-son, Samuel Stone, and his heirs forever.” The testator died, leaving the will in full force, and the bill states that the same was proved in open court, on 27th March, 1794, on the oath of William Terry, a subscribing witness to the same, as appears by the certificate of William Humphreys, the clerk of the court. The legatee, Susannah Stone, intermarried with Benjamin Franklin, who came into the possession of the slave Hetty, and some time afterwards, to wit: in the year 1810, without the knowledge or consent of the. complainant, sold the slave Hetty, and her child, Damon, to the defendant, or some other person, as is alleged by the bill. The said B. Franklin, husband of tbe complainant, died some time in the month of January, 1820, since which time the complainant alleges that the said slaves have been in the possession of the defendant, and the woman has several other children besides the boy Damon. *248 Tbo complainant charges that she has demanded from the <fe fendant the delivery of the said slaves, or that he would acknowledge the 'possession of said slaves, and'give information of the numbers, ages and sexes of the children, which defendant has refused, and complainant is Unable to prove without the oath of defendant. She therefore filed her bill for a discovery and the delivery up of the slaves, and an account for their hire and labor.
The defendant, in his answer, stated that he had no knowledge of the will of Mrs. Maples, or of complainant’s marriage with B. Franklin, except as stated by complainant, and puts her to the proof thereof. Tiie defendant states that on the 3d February. 1810, Lacas Creyón, since deceased, the brother of defendant, purchased the slave Hetty, now in question, and her child, Damon, from one B. Franklin, who was then in possession of the said slaves and pretended to be the owner thereof; and that the said Lucas Creyón gave a fair and full price, to wit: ‡ 500, for said slaves, and obtained a receipt and bill of sale for the same. The defendant also states his belief that Lucas Creyón had-not, at the time of the purchase, and never had any knowledge of Mary Maples or the said last will and testament, or of any claim by the complainant, or that said sale was made without her knowledge or consent. That after said purchase by Lucas Crejon, he conveyed to the firm of J. M. .Creyón ¡k. Co. the said slave and her child, for ‡ 500, which was paid or passed to liis credit, by the said firm; of which he was a member; by which the defendant became a joint owner, and entitled to two thirds of said slaves: and the defendant positively ayers that at the time of said transfer, he had no knowledge of the said will or the claim under it; and upon the death of Lucas Creyón, defendant became entitled to the whole of the said slaves under his last will and testament; and he claims protection of his title as a bona fide purchaser, for valuable consideration without notice. Defendant also insists that the will of Mary Maples has never been recorded in the office of secretary of state, and that any settlement containing a separate., estate or claim thereunder, is fraudulent and void as to *249 •defendant. The defendant admits the death of Behj. Franklin about the time mentioned in the bill, and that the slave Hetty has two children living, Damon and a child about three years old. The defendant admits the demand and refusal, and relies on the statute of limitations.
The first question which 'arises in this case is, as to the proof of the execution oí the last will of Mary Maples. ' The original was not produced, but a copy certified by Wm. Hum-phreys, clerk of the county court of Sumter, where the law, as it then stood, requires last wills and testaments to be recorded. He certifies that it is a copy of the original will, which has been proved in open court, by William Terry, one of the subscribing ■witnesses, on the 27th March, 179'4. Col. J. B. Richardson, proves that the public offices at Statesburgh wére afterwards burnt, and the records burnt with them; that he was in possession of the abovementioned copy of the will of Mrs. Maples and he has remained in possession of it ever since, as one of the executors, till now produced in evidence; and that all the dispositions of said will have been carried into effect, and all the (affairs of the estate, for a period of about 30 years, have been regulated by it. Notwithstanding the objections made on the argument against the probate of the will, I am satisfied that the judge, holding the circuit court, did right in considering the proof sufficient. The law required that the probate of the will should be made in open court, and that it should he recorded •and the original deposited with the officer for safe keeping, and directed certified copies to be delivered to executors, devisees •and others standing in need of them. All this is proved to have been done in this case; and it is further proved that the public records were burnt by accident; and that under the certified copy produced in court, all the affairs of the estate and the rights of the parties interested have been regulated. It would be a severe rule- which would work great mischief to the citizens, to ask higher proof than this.
• It was further .contended that to give the bequest in the will of Mary Maples, of tile'slave Hetty and her children, the effect of a separate estate, so as to be protected from the legal *250 fights of the husband, and from his debts and assignments, the same ought to have been recorded in the secretary’s office, where marriage settlements are required to be recorded. I apprehend that this would be giving an extension to the doctrine of recording marriage settlements, which is new and unwarranted. The statute has never been construed to extend to separate estates given to wdves under the wills of their parents and other relations, and has always been confined to the case which it provides for — real marriage settlements, by deeds, made by husbands themselves.
The question next arose, is this a separate estate, free from the control of the husband? The will is perfectly explicit on this subject; it bequeaths the slave Hetty, and her issue, to Su-sannah Stone, in no wise subject to the debts, contract or arrangement of any future husband, in any manner, shape or form. This makes as complete a case of separate estate, placed beyond the controul of the husband, as can well be penned. And 1 agree with the circuit court in considering it a separate estate. But it is said there is no trustee, and therefore the provision fails, and the husband, Benjamin Franklin, acquired an absolute right, and could dispose of the slaves at his will and pleasure. This however is not the doctrine of the court. It was originally considered to be necessary to have a trustee expressly named in the instrument which created the separate estate for the wife. See 1 P. Wms. 125, Harvey, vs. Harvey, and 2 P. Wms. 79, Burton, vs. Pierpoint. But it has been established for a century, that if land or personality be devised or settled to or upon a married woman, for her separate use, without the precaution of vesting it in trustees, the intention will be effected in equity, and the rights of the wife will be protected by the conversion of her husband into a trustee for her. And it may be added, that any other person who obtains or is put in possession of the wife’s separate property, will be considered and construed to be a trustee for the w'ife; otherwise her right to the property which was intended for her, might be destroyed. The decisions in our own courts have been so; and the English judges have *251 pursued the same course. See 2nd Roper’s husband and wife, 152, 3, &c. and 2nd P. Wms. 31, Bennet, vs. Davis; 9th Ves. 583, Parker, vs. Brook. Even a court of law has extended its protection to the wife, in some special cases, where no trustees were interposed, holding, as the court of equity does, that persons named in the will as trustees for the persons from whom she claimed, were also to be considered as trustees for her. See 5th Term Reports, 434, David, vs. Atkinson, and 2 Roper, 153, 4: and this is the case whether the property be given by strangers to the wife’s separate use, or the estate be given, by the husband for her use. See 2 Roper, 154; 3d Atk. 399; 2 Roper, 90; 9th Ves. 369.
The defendant however relies upon another ground, which his able counsel stated to be his strong one, on' which he had great confidence. It was that he was a bona fide purchaser for valuable consideration without notice; and that such a title Will not be disturbed in equity, in favor, of an equitable claimant. It will be remembered, that Lucas Creyón was the immediate purchaser from B. Franklin, and that he sold part of the interest in the slaves to his brother John, who on his death became heir of the whole; and John M. Creyón the defendant, swears that he believes his brother had no notice of the claim of the complainant under the will, and he swears positively that when he became purchaser of part of the interest from his brother, he had no notice. This is certainly a knotty question, and in my opinion the only difficult part Of the case. It appears indeed that Lucas. Creyón, the first purchaser, paid a fair and .probably a full consideration, and this raises a presumption that he had no notice that B. Franklin was selling him property which he had no right to sell. But. this is only a presumption; for the defendant very properly declines swearing positively that his brother Lucas had no notice of the complainant’s claim, and puts it merely on the ground of belief.
. Now I am of opinion that when a purchaser sets up a purchase for valuable consideration without notice, to protect a •manifest bad title, against the right owner, he is- bound to make *252 that out by very clear proof, (a) The court requires the party who sets up the title of a purchaser for valuable consideration without notice, to be very particular, precise and positive in denying notice, and in setting forth every circumstance from wheuce notice could be inferred. See the language of chancellor Kent, in 1 John. c. c. 802-3; and see lord chancellor Loughborough's opinion in Jerrard, vs. Sanders, 2 Ves. jr. 454. (b) This has not been done and cannot be done in this case as to the purchaser Lucas Creyón. 1 s this was a sale by a husband of separate property of his wife, which" he had no right to make, would it not be monstrous to make the sale of such property valid, when the husband was not the trustee under the will, but is construed to be a trustee expressly to protect the rights of the wife. The legal estate is not in him,(c) as in the cases where the grant is to the husband in trust for the wife; he is only quasi trustee, raised up by the court to preserve the separate estate, and yet we are asked to permit the sale to defeat the estate. The counsel for the defendant cited 4 Lq. Rep 477, to shew the rule as to purchasers for valuable consideration. But there the rule is stated to be where the legal estate is in the *253 frustee wbo sold the property, and in the case cited- the sale was. Hot supported. ■
It appears to me too, that it ought to be remembered that there are no markets overt in this country, where a sale of per* sonal property to a bona fide purchaser for valuable consider» iron is good, though the title of the vendor to the property is bad. Therefore every purchaser is bound to enquire into the title. Then how stands the- case between these parties? The wife, whose interests are at variance as to this property with... her husband’s, but whose hands are tied by the marital bonds,, could not prevent the husband making the sale; nor does it appear that she was at all consulted or informed of his proceed* ings; the purchaser it is said asked no questions, ior the defence-rests on his having made no enquiry and obtained no notice; but-he takes a title from a man who has no right to sell; he could and ought to have enquired from B. Franklin for his titles and his right to sell the slave in question, and he would then have-learnt the truth, that the property was the separate property of' the wife, unsafe to touch. The equities then of these parties, are not equal. There is some balance on the one side for not enquiring, none on the other. Now I do apprehend that to, give application to the rule that the court will not give relief to the equity of the wife against the purchaser for valuable consi-; deration without notice, the equities must be equal or nearly so. See Walwin, vs. Lee. Lord chancellor Eldon admits that it may be worth consideration whether b°th parties are equally innocent, (a) Though he uses it there in favor of the purcha *254 ser; see 9th Ves. 31. In that case lord Eldon puts the very principle of the rule, that the court will not give relief to un-equitable claimant against a purchaser for a valuable consideration, on the ground that the purchaser has paid a valuable consideration, and therefore lie is not bound to give information which may affect his title. Now in the case we are considering, the equities do not appear to me to be equal, and therefore the application of the rule may not be obligatory. Nor is the bill' filed for a disclosure of the title or the delivery of title deeds; it was to have an account and information as to the increase of the slaves. Indeed it would be extraordinary to give that rule such an application in the case of the wife’s separate estate sold by the husband, when the court has manifested such a jealousy to protect the rights of the wife to a settled or separate property, that it refuses to sanction incumbrances made by the husband with the consent of the wife and her trustee, as in the case of Ewing & Smith, Lowndes & Champney, and others. Chancellor Kent, in the case of Haviland & Myers, 6th John. 27, says that the wife’s equity to a suitable provision out of her separate estate, was so well established, that it would prevail against the husband or his assignees, and against any sale made by him even for a valuable consideration. The de_ fendant finally relied on the statute of limitations. The interests of the husband and wife were adverse to each other in relation to this property, at and subsequent to the time of the sale, and she could not sue alone. The legal estate was not in him; he was only a trustee by construction, to preserve her rights and not to destroy them: he has been dead only about two years, and the statute has not had time to operate between his death and the filing of this bill.- Upon the whole, I think the decree of the circuit court in favor of the complainant was correct, and ought to be affirmed.
*255 It is ordered and adjudged that the decree of the circuit court be affirmed.
Chancellors Gaillard, Waties, and James, concurred.

.) Sed. Qu. How is such proof to be made? — R.

.) “I am perfectly satisfied upon the general reasoning, that this court will never extend its jurisdiction to compel a purchaser who has fuüy and in the most precise terms 'denied all the circumstance, mentioned as circumstances from which notiee may be inferred, to go on to make a further answer as to all the circumstances of the case, that are to blot and rip up his title. To do so, would be to act against the knovvn established principles of this court I think it has been decided, that against a purchaser for valuable consideration yvithout notice, this court will not take the least step imaginable. I believe it. is decided that you cannot even have a bill to perpetuate testimony against him. I am pretty sure if is determined that no advantage the law gives him shall be taken from him by this court. .The doctrine as to the jurisdiction of the court is this; you cannot attach upon the conscience of the parly any demand whatever, where he stands as a purchaser having paid his money, and denies all notice of the circumstances set up by the bill.” — Per lord Loughborough, in Jerrard, vs. Saunder’s, 2 Ves. 457.

 It does not appear from the opinion of the court in whom the legal estate was. In the executors of the grand-mother’s will? In the wife? Qu, Could either have maintained a suit at law after, the husband’s deathj against the defendant? — It.

 Walwin, vs. Lee, 9, Ves. 24. “The bill stated the title of the plaintiff as tenant in tail under the marriage settlement of his late father, and an act oí parliament, discharging part of his estates from the uses of the settlement, and settling other estates; and that he had suffered a recovery; and suggested that the defendant had in bis custody or power the title deeds, &e, relating to the estates comprised in the act of parliament, claiming, under pretence of mort--gages by the plaintilTs father, who was only tenant for life under the settlement, prayed that the defendant may he decreed to deliver up all deeds, &e.”
“The defendant, asto so much of thebill as sought the discovery and deliverer of the title deeds, &c. except the deeds after mentioned, pleaded that the plaintiff’s father, alleging himself to be seized in fee, and being in actual possession .<# the premises as apparent owner, and being also in actual possession, of £h^ *254 title deeds, &c. relating thereto, as apparent owner thereof, and having tira actual disposal thereof, executed the several mortgages (stating them) under which the defendant claimed; and averred 'that the defendant and the other mortgagees, through whom he derived, had no notice of the act of parliament.’’
■“The plea having stood a considerable time for judgment, was allowed.'’